UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **JENNIFER MOLOSSO** | * | **CIVIL ACTION NO. 3:23-CV-00567** |
| V. | * | **JUDGE DONALD WALTER** |
| **BOARD OF SUPERVISORS OF THE UNIVERSITY OF LOUISIANA SYSTEM d/b/a UNIVERSITY OF LOUISIANA AT MONROE ET. AL.** | * | **MAG. JUDGE KAYLA D. MCCLUSKY** |
| | * | **JURY DEMAND** |

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DENYING RULE 56(d) RELIEF

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Jennifer Molosso, who respectfully moves for reconsideration of the Court's Order (Record Document 56) denying her Rule 56(d) Motion to defer consideration of Defendants' Motion for Summary Judgment and extend the discovery deadline ("Plaintiff's Motion"). Reconsideration is warranted under Federal Rule of Civil Procedure 54(b) in light of manifest errors of fact and law and new evidence clarifying the necessity of additional discovery.

### I.      INTRODUCTION

Plaintiff previously moved under Rule 56(d) to defer ruling on summary judgment to extend the discovery deadline and to allow time for necessary depositions, including those of individual Defendants. The Court denied Plaintiff's Motion, in part, apparently concluding that Plaintiff's counsel had not diligently pursued discovery and had prioritized other cases over this matter.

1

However, this finding does not reflect the realities of Plaintiff's counsel's obligations and the necessity of document review prior to depositions in an efficient and cost-effective measure. As detailed in the Plaintiff's Motion and in the supporting affidavit filed therewith, the timing and volume of Defendants' document production, coupled with competing litigation deadlines (many of which were in federal court), made immediate depositions impractical and prejudicial to Plaintiff's case. Reconsideration is necessary to avoid unfairly forcing Plaintiff to oppose summary judgment without the ability to sufficiently review of voluminous documents before taking critical depositions of key witnesses.

## II. LEGAL STANDARD FOR RECONSIDERATION

Federal Rule of Civil Procedure 54(b) allows reconsideration of interlocutory orders when new evidence is presented, there is a clear error of law or fact, or to prevent manifest injustice. See *Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009). Reconsideration is appropriate where: (1) The Court's prior ruling was based on factual or legal errors; (2) new evidence clarifies prior misapprehensions; or (3) the ruling results in substantial injustice. See *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). Plaintiff respectfully submits that certain factual considerations may not have been fully addressed in the Court's prior ruling and warrant reconsideration to avoid substantial injustice.

## III. REASONS FOR RECONSIDERATION

**A.** **The Need for Meaningful Document Review Before Depositions: Judicial Deference to Academic Institutions Creates a Narrow Path for Plaintiffs.**

One of the most significant systemic hurdles in academic discrimination cases is the broad judicial deference given to academic institutions in decisions related to student dismissals. Courts often refrain from second-guessing the academic and administrative decisions of universities, especially when dismissal is framed as a matter of academic judgment rather than discrimination

2

or retaliation. See *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) (noting that federal courts should defer to academic decisions unless there is a "substantial departure from accepted academic norms" suggesting an improper motive). This heightened deference creates an exceptionally narrow path for plaintiffs, requiring them to present clear, well-documented evidence that the dismissal was not a legitimate academic decision but rather the result of unlawful discrimination or retaliation.

Because of this built-in judicial skepticism toward student discrimination claims against universities, the ability to fully develop the factual record before opposing summary judgment is critical. The plaintiff must thread a very narrow needle, showing that the stated academic reasons for dismissal were mere pretext for discrimination based on race and / or disability. This requires not only a careful review of the voluminous documents produced by Defendants but also a strategic and well-prepared approach to depositions, where key witnesses can be questioned regarding disparate treatment, comparator evidence, and deviations from institutional norms.

**B.     The Court's Finding of a Lack of Diligence Overlooks the Timing and Volume of Defendants' Document Production.**

Here, Defendants only produced these critical documents after Plaintiff filed a motion to compel, resulting in a late-stage document dump of nearly 5,000 pages—a substantial burden for any litigant, let alone a plaintiff facing institutional defendants with far greater resources. To deny Plaintiff adequate time to review these documents and conduct targeted, informed depositions would be to shackle her ability to challenge the university's justifications for dismissal effectively. Given that courts already lean toward upholding academic dismissals, preventing Plaintiff from developing her case through proper discovery would not simply disadvantage her—it would place her at an insurmountable disadvantage.

Without sufficient time to review these documents and to prepare for depositions, Plaintiff's ability to identify key discrepancies, uncover discriminatory patterns, and expose pretext will be severely compromised. In this context, the combination of an untimely document dump and an insufficient opportunity for depositions functions as a procedural roadblock, effectively insulating Defendants from meaningful accountability. Given the extreme disadvantage already inherent in challenging academic dismissals under existing legal standards, denying Plaintiff the opportunity to conduct full discovery before opposing summary judgment would not be merely unfair—it would be outcome-determinative.

C.  **Plaintiff's Counsel Was Managing Multiple Litigation Obligations, Not Neglecting This Case.**

The Court's ruling suggests that Plaintiff's counsel improperly prioritized other cases over this one, but that assumption does not reflect the reality of counsel's obligations. This was not a matter of placing this case on the back burner in favor of others, but rather a necessary effort to balance multiple litigation demands while ensuring that all cases, including this one, received due attention.[1]

---

[1] Plaintiff's counsel is forced to question: Which federal judge was the undersigned counsel not supposed to prioritize? (1) The United States Supreme Court? (*Pipkins v. James E. Stewart*, Civil Action No. Civil Action No. 5:15-CV-02722 – opposition to writ application due January 6, 2025); (2) Western District of Louisiana: United States District Judge Edwards? (*Woerner v. Board of Supervisors*, Civil Action no. 21-01846 – four briefing deadlines on various dispositive motions and other pre-trial motions due during the month of January 2025); United States District Judge Joseph? (*Drew Mouton v. City of Shreveport*, Civil Action No. Civil Action No. 5:23-CV-01535 -opposition to Motoin for Summary Judgment due January 15, 2025) and *Wilcox v. Lotte Chemical* Civil Action No. 2:24-cv-01309 – opposition to Motion to Dismiss due January 17, 2025); United States District Judge Hicks? (*Carla White v. Northwest Louisiana Criminalistic Laboratory,* Civil Action No. Civil Action No. 21-1850 -- opposition to motion for summary judgment due January 30, 2025 and *Wood v. Kansas City Southern* Civil Action No. 5:24-cv-01180 - opposition to Motion to Dismiss due February 27, 2025); United States District Court Judge Doughty (*Frazier v. Board of Supervisor of the State of Louisiana*, Civil Action No. 3:23-cv-00248 – opposition to motion to strike due February 4, 2025)  or (3) Eastern District of Louisiana cases:  United States District Judge Africk? (*Shelby Cox v. Mignon Faget, LTD*, Civil Action No. 2:24-CV-01068 – three pretrial conferences, motions in limine deadlines, pretrial order, exhibit and witness deadlines, jury instructions deadline and a jury trial held the week of February 18-21, 2025). This list is just a summary of the undersigned counsel's federal court practice and does not include arguments and hearings in her state court cases.  Undersigned counsel is not trying to be flippant but is simply trying to make the point that she does her best to prioritize all cases and to use her best judgment regarding the needs of each case. Simply put, the request for an extension of time in this case is not the result of an unwarranted failure to prioritize, but, even it is was, any risk taken

Plaintiff's counsel is part of a small firm, Downer, Jones, Marino & Wilhite, LLC (the "Firm") with six attorneys, only two of whom focus on civil rights and employment law. Each attorney carries a full caseload. Unlike larger firms, the Firm does not have associates or law clerks to handle document review or deposition preparation—every aspect of litigation is managed directly by counsel. This case, like all of the Firm's civil rights cases, required active client participation in discovery because employment plaintiffs are uniquely positioned as the primary source of facts in their cases.

Here, Plaintiff's direct involvement in document review was essential—not only to identify relevant information but also to help interpret the content of the production, identify missing materials, and assist in framing deposition questions. The nearly 5,000 pages of documents were produced only after a motion to compel, and reviewing these materials before proceeding with depositions—particularly those of the individual Defendants—was a necessary and strategic step, not a delay tactic.

This is not a case where extensions are sought because counsel is lazy, disorganized, or inattentive. Rather, this is the reality of plaintiff-side litigation, where attorneys must balance a full caseload, work within tight budgets, and make cost-conscious decisions to provide high-quality representation while ensuring that cases are not financially untenable for their clients. Unemployed workers bringing employment discrimination claims often lack the financial means to engage in extensive, high-cost discovery tactics. Students dismissed from academic programs due to discrimination or retaliation often have no financial resources to mount an extensive legal battle. Unlike corporate or government defendants who have the resources to fund litigation indefinitely,

---

by undersigned counsel should not penalize the litigant plaintiff in her pursuit of justice and fair treatment by this Court.

civil rights plaintiffs usually must rely upon extensions to complete discovery in a cost-effective manner.

Depositions are among the most expensive aspects of litigation, and proceeding with them before fully understanding the contents of the document production would have been wasteful and inefficient. It would be fundamentally unjust to penalize Plaintiff simply because she used a more financially responsible approach to document review—one that was slower but necessary to ensure that depositions were properly conducted.

Thus, seeking additional time to complete document review and prepare for depositions is not a sign of neglect—it is a necessity of plaintiff-side litigation. The alternative would be rushing through discovery, taking depositions unprepared, or foregoing critical evidence due to financial constraints. That would not only prejudice Plaintiff but would also create an unjust system where only the wealthiest litigants could afford to properly oppose summary judgment.

The practical and economic constraints on plaintiff-side litigation should not be used to justify forcing Plaintiff into an artificially compressed discovery period, especially when Defendants themselves delayed document production until after Plaintiff was forced to file a motion to compel which necessarily delayed receipt of documents. If Plaintiff had unlimited resources, she might have hired multiple attorneys, document review teams, or expert consultants to accelerate this process—but that is simply not the reality for civil rights plaintiffs or the lawyers who represent them.

In this case, this Court notes that the dispositive motion was filed on February 20, 2025, but that counsel did not file this request for extension of time until March 12, 2025. Importantly when the disposition motion was filed, undersigned counsel was in trial in the *Cox v. Mignon Faget* case in New Orleans, Louisiana which did not conclude until Friday, February 21, 2025. Returning

6

to her office on February 24, 2025, after being in a weeklong jury trial out of town, the undersigned was required to attend to matters which had accumulated in her absence (in addition to managing a small law office), to prepare clients for a complicated settlement conference set in this Court on February 26, 2025 and meet other briefing deadlines, including but not limited to, post judgment matters on the *Cox v. Mignon Faget* jury trial.

Plaintiff's counsel attempts to diligently pursue each case. In fact, the *Cox v. Mignon Faget* trial, which consumed a large part of counsel's time in January and February, was successful precisely because of thorough preparation—the same level of preparation that Plaintiff's counsel strives to bring to every case, including this one. Civil rights litigation is fact-intensive and often turns on subtle but critical details that require meticulous preparation. Success in these cases does not come from rushing through discovery or proceeding to depositions unprepared, but from carefully reviewing documents, analyzing patterns, and crafting precise lines of questioning for depositions. This approach is not a delay tactic, but a proven strategy for success—one that Plaintiff's counsel has demonstrated works.

It would be inconsistent and fundamentally unfair to penalize Plaintiff for having an attorney who is committed to diligent preparation and strategic advocacy, particularly when that preparation has led to successful outcomes for other civil rights plaintiffs. Just as counsel's preparation contributed to a positive result in the *Cox v. Mignon Faget* trial, a fair opportunity to conduct fully review 5,0000 documents and to conduct full discovery in this case is necessary to give Plaintiff the best possible chance of success.

In this context, granting the requested extension is not an indulgence—it is a procedural necessity to ensure fairness and equal access to justice. Denial of the same would result in substantial injustice.

## IV. CONCLUSION

Plaintiff respectfully requests that the Court reconsider its order denying Rule 56(d) relief and allow the necessary time to complete depositions and to fully develop the factual record before ruling on summary judgment. Denying Plaintiff this opportunity would not only prejudice her ability to present her claims but also reinforce systemic barriers that already make it disproportionately difficult for employment law plaintiffs to survive summary judgment in federal court.

## RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Reconsider its ruling denying Plaintiff's Rule 56(d) motion;

2. Extend the discovery deadline to April 25, 2025, to allow Plaintiff to depose key witnesses, including the individual Defendants;

3. Defer ruling on summary judgment until Plaintiff has had an opportunity to take these depositions, obtain the transcripts and submit a fully developed opposition brief; and

4. Grant such other relief as may be just and proper.

    Respectfully Submitted,

    DOWNER, JONES, MARINO & WILHITE
    401 Market Street, Suite 1250
    Shreveport, LA 71101
    Tel: 318-213-4444
    Fax: 318-213-4445
    e-mail: ajones@dhw-law.com

    Allison A. Jones, Bar No. 16990


    By: */s/ Allison A. Jones*
        ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 18th day of March, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel by operation of the court's electronic filing system.

                                                */s/ Allison A. Jones*
                                                OF COUNSEL