# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | |
|---|---|
| JENNIFER MOLOSSO | CIVIL ACTION NO. 23-567 |
| VERSUS | JUDGE DONALD E. WALTER |
| BOARD OF SUPERVISORS UNIVERSITY OF LOUISIANA SYSTEM | MAG. JUDGE KAYLA D. MCCLUSKY |

## MEMORANDUM RULING

Before the Court is a motion for summary judgment filed by Defendants, Board of Supervisors of Louisiana Systems ("Board") d/b/a University of Louisiana at Monroe ("ULM"), Dr. Mark Arant ("Dr. Arant"), and Dr. Donald Simpson ("Dr. Simpson") (collectively "Defendants"). See Record Document 50. Plaintiff, Jennifer Molosso ("Molosso") filed an opposition to which Defendants replied. See Record Documents 72 and 75. In her opposition, Molosso seemingly raises either a renewed motion for reconsideration or a renewed motion pursuant to Federal Rule of Civil Procedure 56(d). See Record Document 72. Also before the Court is a motion to strike a portion of Defendant's reply filed by Molosso. See Record Document 76. Defendants filed an opposition to which Molosso replied. See Record Documents 81 and 82. For the reasons stated below, Defendants' motion for summary judgment (Record Document 50) is **GRANTED**. Molosso's renewed Rule 56(d) or motion for reconsideration (Record Document 72) is **DENIED**. Molosso's motion to strike (Record Document 76) is **GRANTED**.

## BACKGROUND

This is a discrimination case. Molosso is a white female who allegedly suffers from the disabilities of attention deficit hyperactivity disorder ("ADHD") and depression (collectively

"disabilities").[1] See Record Document 72-2 at 7. Molosso started classes at the ULM Kitty Degree School of Nursing ("Nursing School") in the fall of 2018. See Record Document 72-1 at ¶ 2. The Nursing School curriculum consists of five semesters, sometimes referred to as "levels." See id. at ¶ 3. Classes with a "NURS" prefix in this curriculum may only be repeated once, so students who fail a repeated "NURS" course are dismissed from the Nursing School. See Record Documents 50-2 at ¶ 3; 50-3 at 3; and 72-3 at 9. Additionally, if students fail three nursing courses, they are dismissed from the Nursing School. See Record Documents 50-3 at 3 and 50-4 at 6. This policy is commonly referred to as the "three strikes" rule. Record Document 50-3 at 7. Students may appeal individual course grades if they fail a course and may appeal for readmission if they are dismissed from the Nursing School. See id. at 3 and 72-2 at 12.

In the fall of 2019, Molosso failed NURS 3028 and NURS 3029. See Record Document 72-1 at ¶ 4. In the spring of 2020, Molosso repeated and passed NURS 3028 and NURS 3029. See Record Document 50-3 at 1. In the fall of 2020, Molosso failed NURS 4000 and NURS 4001. See Record Document 72-1 at ¶ 5. In the spring of 2021, Molosso failed NURS 4000 again. See Record Documents 50-3 at 1, 3 and 72-3 at 11. Because Molosso had failed NURS 4000 for the second time, Molosso was dismissed from the Nursing School. See Record Document 72-1 at ¶ 6.

---

[1] The Court will not consider any claims based on anxiety and psoriasis because Molosso asserted claims premised on those disabilities for the first time in her opposition to summary judgment. See Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990) ("[T]his claim was not raised in [the plaintiff's] second amended complaint but, rather, was raised in his response to the defendants' motion for summary judgment and, as such, was not properly before the court."); Barnard v. L-3 Commc'ns Integrated Sys. L.P., No. 16-0282, 2017 WL 3726764, *4 (N.D. Tex. Aug. 30, 2017) ("The only disability Barnard alleges in her complaint is ADHD. . . . Accordingly, Barnard cannot rely on this new claim (i.e., failure to accommodate Barnard's chronic back pain) as a basis to avoid summary judgment."); Robles v. Eminent Med. Ctr., LLC, 619 F. Supp. 3d 609, 636 (N.D. Tex. 2022).

Molosso filed an appeal for readmission ("Appeal I"). See id. at ¶ 7. During the appeal process, Molosso met with Dr. Simpson, the Dean of the College of Health and Sciences. See Record Documents 50-3 at 3 and 72-3 at 7. Dr. Simpson granted Appeal I and readmitted Molosso subject to her compliance with terms and conditions that "addressed stressors she identified in her appeal." Record Document 50-3 at 1-2. Molosso refers to these terms and conditions as a "learning contract." Record Document 72-2 at 8. Neither party disputes that, as part of this contract, Molosso was recommended to attend counseling at the ULM Counseling Center. See id. at 21 and 75 at 5. However, Molosso contends she did not "understand the role of the Counseling Center in obtaining a disability accommodation, [] it was not explained to her [, and] . . . it was presented to her as a mental health resource." Record Document 72-2 at 8. Following her readmission, Molosso passed NURS 4000 and proceeded to level five. See Record Document 50-3 at 2. Molosso alleges several faculty members knew of her disabilities before she began level five. See Record Document 72-3 at 6-7.

In the spring of 2022, Molosso began her level five, which was her final semester. See Record Documents 50-3 at 4 and 72-3 at 15. Molosso enrolled in NURS 4066 and NURS 4067. See Record Document 72-1 at ¶ 8. Students completed three examinations for each course. See Record Documents 50-3 at 14 and 72-2 at 9. Molosso failed the first two examinations in NURS 4066 and NURS 4067. See Record Documents 50-6 at 2 and 50-7 at 2. Students who failed examinations were required to meet with the professor for a test review. See Record Document 72-3 at 5. For NURS 4067, Molosso met with Ms. Sherilyn Wiggins ("Ms. Wiggins"), her NURS 4067 instructor, for her test reviews for the first and second examinations. See Record Documents 72-3 at 4-5 and 75 at 5-7. During one of these test reviews, Ms. Wiggins recommended Molosso

go to the ULM Counseling Center, and she wrote that recommendation on Molosso's test review. See id.

Molosso also met with Ms. Marcie Young ("Ms. Young"), her NURS 4066 instructor, for test reviews in NURS 4066. See Record Document 72-3 at 5-6. Prior to the final examination, Molosso attended a meeting with Ms. Young. See id. and 72-5 at 12-14. During this meeting, Ms. Young and Molosso discussed accommodations. See id. Molosso testified she told Ms. Young she was struggling because of her disabilities, and Ms. Young brought up testing accommodations. See Record Document 72-3 at 6, 8. Molosso told Ms. Young she could try to get an accommodation, but Ms. Young allegedly informed her it was "too late" to receive one. Id. Molosso testified that this conversation was the first time she first learned about the availability of testing accommodations. See id. at 6.

Molosso failed NURS 4066 and NURS 4067. See Record Document 72-1 at ¶ 8. She filed a grade appeal for those courses, and the grade appeals were denied. See id. at ¶ 9. Molosso was dismissed from the Nursing School. See id. at ¶ 8. Molosso subsequently filed an appeal for readmission ("Appeal II"). See id. at ¶ 10. The Admissions & Academics Standards ("A&A") Committee denied her request for readmission. See id. The Ad Hoc Committee reviewed and upheld the A&A Committee's denial. See id. at ¶ 11.

The initiation of this lawsuit followed. In her complaint, Molosso asserts federal law claims based on alleged violations of Title VI, Section 504 of the Rehabilitation Act ("Section 504"), and 42 U.S.C. § 1983 ("Section 1983"). See Record Document 1. Molosso additionally asserts state law claims based on alleged violations of Louisiana Constitution Article 1, sections 2 and 3, intentional infliction of emotional distress, violations of ULM's policy, and bad faith breach of contract. See id.

4

Defendants move for summary judgment of all of Molosso's claims. <u>See</u> Record Document 50. Defendants generally contend no genuine dispute as to material fact exists, and they are entitled to judgment as a matter of law. <u>See id.</u> Molosso limited her opposition to her failure to accommodate claim[2] and maintains that genuine disputes exist that preclude summary judgment as to that claim. <u>See</u> Record Document 72.

## <u>LAW & ANALYSIS</u>

**I.    Rule 56(d) Relief.**

The Court begins with Molosso's renewed motion for relief under Federal Rule of Civil Procedure 56(d), which is contained in her opposition to Defendants' motion for summary judgment. The procedural posture of this motion is relevant. On April 26, 2024, Molosso propounded discovery requests on Defendants. <u>See</u> Record Document 31 at 1. Defendants objected to those discovery requests based on the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g). <u>See</u> Record Document 31-2 at 2. Molosso subsequently filed a motion to compel. <u>See</u> Record Document 31.

On November 8, 2024, the Court ordered Defendants to "provide Molosso with complete responses to all discovery requests objected to upon the basis of FERPA" subject to a few exceptions. Record Document 44 at 15. On December 2, 2024, the parties filed a joint motion to continue the trial date and all remaining deadlines because Defendants needed additional time to produce the documents. <u>See</u> Record Document 45. The Court granted this motion, extended the discovery deadline to March 24, 2025, and reset trial to July 21, 2025. <u>See</u> Record Documents 48

---

[2] Molosso alleges she was forced to limit her opposition to these claims because "[m]any documents sought by [Molosso] to support these claims ha[d] not yet been produced." Record Document 72-3 at 5 n.1. The Court addresses the alleged discovery disputes in its section on Rule 56(d) relief.

and 49. On December 23, 2024, Defendants produced approximately 5,000 documents. See Record Document 53-1 at 2. Thus, on December 23, 2024, when Molosso received these documents from Defendants, she knew she had until March 24, 2025, to complete discovery.

Defendants filed the instant motion for summary judgment on February 20, 2025. See Record Document 50. That same day, the Court set Molosso's response deadline set for March 13, 2025. See Record Documents 50 and 51. Despite having known of the impending discovery deadline since December 16, 2024, and her response deadline since February 20, 2025, Molosso waited until March 11, 2025, to file a motion to extend the discovery deadline. See Record Documents 49, 51, and 52. Molosso further waited until March 12, 2025, the eve of her opposition deadline, to file a Rule 56(d) motion to defer consideration of the pending motion for summary judgment, to extend the discovery deadline, and to extend her opposition deadline. See Record Document 53. Molosso contended that her counsel's schedule prevented her from "complet[ing] the review of Defendants' 5,000 documents, identify[ing] any deficiencies, or schedul[ing] necessary depositions." Record Document 53-1 at 2. Molosso's counsel cited to her work in several other cases, including the filing of an opposition to a Supreme Court writ application, briefing for three partial motions for summary judgment, briefing for two Daubert motions, a week-long federal jury trial, and a mediation.[3] See id.

---

[3] Notably, the briefing for the summary judgment motions and the Daubert motions occurred "in December and January," and the jury trial concluded on February 21, 2025, the day after Defendants filed their motion for summary judgment. See Record Documents 50 and 53-1 at 2. Further, almost all of these cited cases appear to have had deadlines established *prior to* the filing of Defendants' motion. See Record Document 57 at 4, n. 1 (Molosso's citation to specific cases and the associated deadlines). Thus, Molosso's counsel had notice that these deadlines may interfere with her ability to conduct discovery and respond to Defendants' motion in a timely manner, yet she still waited until two days and the day before her opposition was due to seek relief from this Court.

The Court extended the opposition deadline to April 4, 2024, but did not extend the discovery deadline because Molosso had not diligently pursued discovery. See Record Document 56. The Court noted it had previously extended the discovery deadline from December 9, 2024, to March 24, 2025, to allow the parties to complete discovery on the documents at issue. See id. During that interim, Molosso's counsel had not scheduled any depositions, prioritized her work in other cases at the expense of this case, and waited until shortly before her opposition was due to seek relief. See id. The Court further found that an extension of the discovery deadline would prevent it from timely resolving the pending motion for summary judgment. See id. On March 18, 2024, Molosso filed a motion for reconsideration, which this Court denied. See Record Documents 57 and 59.

On March 24, 2025, the day of the discovery deadline, Molosso filed a motion to compel the production of certain categories of documents. See Record Document 62. Defendants opposed that motion, arguing they had fully addressed Molosso's discovery requests. See Record Document 65. On April 3, 2025, Molosso replied. See Record Document 66. Nearly simultaneously, Magistrate Judge McClusky filed an order denying the motion to compel. See Record Document 67. That memorandum order did not address the arguments raised in Molosso's reply due to the timing of the filing. See Record Document 68. Therefore, on April 4, 2025, Magistrate Judge McClusky issued a supplemental order giving Defendants seven days to either (1) produce certain documents or (2) inform the Court those documents were not available. See id. That same day, Molosso filed a motion for reconsideration of Magistrate Judge McClusky's order and a motion for Rule 56(d) relief.[4] See Record Documents 69 and 70. The Court granted the Rule 56(d) motion

---

[4] In this motion, Molosso argues the Court's ruling on her first Rule 56(d) motion had "[t]he practical effect . . . [of] requir[ing] opposition briefing before discovery disputes had been fully resolved or considered." Record Document 69 at 3-4. At the time the Court issued that ruling, the

in part, finding Molosso could supplement her opposition if Defendants' production was non-compliant. <u>See</u> Record Document 71.

On April 10, 2025, Defendants filed a notice of compliance. <u>See</u> Record Document 74. On April 17, 2025, Magistrate Judge McClusky denied in part and deferred in part Molosso's motion for reconsideration. <u>See</u> Record Document 78. The Court ordered Defendants to produce its faculty grade adjustment justification forms to the Court for in camera review to determine if such documents were relevant to Molosso's claims. <u>See id.</u> On April 25, 2025, the Court reiterated its previous conclusion that the forms were irrelevant and denied the motion for reconsideration. <u>See</u> Record Document 80.

The Court now turns to Molosso's opposition to summary judgment, which appears to include a re-urged Rule 56(d) motion and/or motion for reconsideration of the Court's orders regarding the same. <u>See</u> Record Document 72. In this motion, Molosso avers that "[m]any documents sought by [Molosso] to support [her] claims have not yet been produced," and she was consequently "forced to limit [her] opposition to her claim that ULM failed to engage in the deliberative process and failed to provide an accommodation for her known disability." Record Document 72-2 at 5-6 and 5 n.1, 2. But as explained *supra*, any documents identified by Molosso have already been produced, are not in Defendants' possession, or are irrelevant to her claims. The Court finds no sufficient reason for reconsidering its previous Rule 56(d) orders. Similarly, the Court finds Molosso is not entitled Rule 56(d) relief because she has not "set forth a plausible basis for believing that *specified* facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the

---

only discovery issue before the Court was Molosso's request for additional time to complete discovery. The Court had no obligation to predict or search for a potential discovery dispute not identified by Molosso.

pending summary judgment motion." <u>Am. Fam. Life Assur. Co. of Columbus v. Biles</u>, 714 F.3d 887, 894 (5th Cir. 2013) (emphasis added). Accordingly, to the extent Molosso's opposition can be construed as raising a renewed Rule 56(d) motion or a motion for reconsideration, such motion is **DENIED**.

## II.    Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Quality Infusion Care, Inc. v. Health Care Serv. Corp.</u>, 628 F.3d 725, 728 (5th Cir. 2010). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder "could return a verdict for the nonmoving party." <u>Id.</u> "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (quoting Fed. R. Civ. P. 56(c)). "[W]hen the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case." <u>Austin v. Kroger Texas, L.P.</u>, 864 F.3d 326, 335 (5th Cir. 2017).

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific

9

facts showing the existence of a genuine issue for trial." <u>Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.</u>, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); <u>see also</u> Fed. R. Civ. P. 56(c)(1). "The court has no obligation to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." <u>Kim Kool Inc. v. Cobra Trucking LLC</u>, 605 F. Supp. 3d 881, 884 (W.D. La. 2022) (quoting <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994)).

"A motion for summary judgment cannot be granted simply because there is no opposition." <u>Hetzel v. Bethlehem Steel Corp.</u>, 50 F.3d 360, 362 n.3 (5th Cir. 1995). "The movant has the burden to establish the absence of a genuine issue of material fact, and, unless it has done so, the court may not grant the motion, irrespective of whether any response was filed." <u>Kim Kool Inc.</u>, 605 F. Supp. 3d at 884. Nevertheless, "[w]hen a party does not file an opposition to a motion for summary judgment, the district court is permitted to consider the facts listed in support of the motion as undisputed." <u>Jegart v. Roman Cath. Church of Diocese of Houma Thibodaux</u>, 384 F. App'x 398, 400 (5th Cir. 2010).

## III.    Section 504: Failure to Accommodate and Failure to Engage in a Deliberative Process.[5]

Section 504 provides, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). "In addition to [its] respective prohibition[] of disability-based discrimination, . . . the Rehabilitation Act impose[s] upon public entities an

---

[5] The Court will not consider Molosso's ADA claims because those claims were not pled in her complaint and were raised for the first time in her opposition. <u>See</u> <u>Fisher</u>, 895 F.2d at 1078; <u>Carranza v. Shelton & Valadez, P.C.</u>, No. 22-25, 2023 WL 149070, at *4 (W.D. Tex. Jan. 10, 2023) ("Plaintiff's live pleading does not contain ADA claims, and, therefore, these claims have not been considered by the Court.").

affirmative obligation to make reasonable accommodations for disabled individuals." <u>Bennett-Nelson v. La. Bd. of Regents</u>, 431 F.3d 448, 454 (5th Cir. 2005). To establish a prima facie case under Section 504, a plaintiff must show: "(1) that [s]he is a qualified individual . . . ; (2) that [s]he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of h[er] disability." <u>J.W. v. Paley</u>, 81 F.4th 440, 449 (5th Cir. 2023). To satisfy the second prong, "[t]he plaintiff can either show disparate treatment . . . or [s]he can show a failure to accommodate." <u>Arce v. La.</u>, 226 F. Supp. 3d 643, 650-51 (E.D. La. 2016).

To establish a failure to accommodate claim, the plaintiff must show "(1) [s]he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." <u>Smith v. Harris Cnty., Texas</u>, 956 F.3d 311, 317 (5th Cir. 2020) (quoting <u>Ball v. LeBlanc</u>, 792 F.3d 584, 596 n.9 (5th Cir. 2015)). A defendant entity knows of the disability and its consequential limitations where either "the plaintiff requested an accommodation or . . . the nature of the limitation was open and obvious." <u>Cadena v. El Paso Cnty.</u>, 946 F.3d 717, 724 (5th Cir. 2020). When a plaintiff requests an accommodation or the need for such accommodation is open and obvious, the defendant "is obligated by law to engage in an 'interactive process.'" <u>EEOC v. Chevron Phillips Chem. Co., LP</u>, 570 F.3d 606, 621 (5th Cir. 2009) (quoting <u>Tobin v. Liberty Mut. Ins. Co.</u>, 433 F.3d 100, 108 (1st Cir.2005)).

At issue in this motion is whether Molosso's alleged disability, her consequential limitations, and her need for accommodations were known by Defendants.[6] Defendants maintain "there is no evidence Molosso ever sought testing accommodations at ULM" and that Molosso "cannot show that [Defendants] had knowledge of her alleged disabilities and importantly, her resulting limitations." Record Documents 50-3 at 10 and 75 at 3. Defendants conclude summary judgment is appropriate because Molosso faults "ULM for not providing an accommodation, for which she admittedly did not apply." Record Document 50-3 at 11.

Defendants highlight the NURS 4066 syllabus, which explains how to get accommodations, describes example accommodations, directs students to the online website (where they can obtain more information), and provides contact information for students who "need accommodations because of a known or suspected disability." Record Document 50-6 at 18, 24. Neither party disputes that the ULM Counseling Center handles accommodation requests and that Molosso did not request an accommodation through that entity. See Record Documents 50-2 at ¶ 18; 72-2 at 8, 11; 72-3 at 4; and 75 at 4. Defendants further aver Molosso cannot show that her need for accommodations was open, obvious, and apparent because her disabilities were mental in nature. See Record Document 50-3 at 12. On these facts, Defendants argue Molosso cannot show Defendants knew of her disabilities, limitations, and need for accommodation, which is an essential element of her failure to accommodate claim. See id.

---

[6] Defendants argued for the first time in their reply that Molosso cannot show "she is a qualified individual." Record Document 75. The Court will not consider arguments raised for the first time in a reply. See Gillaspy v. Dallas Indep. Sch. Dist., 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs."). Thus, Molosso's motion to strike (Record Document 76) is **GRANTED**, and the Court will not consider Defendants' arguments about whether she was a qualified individual.

Defendants have met their initial summary judgment burden. Defendants' motion supports they were not aware of Molosso's disabilities, limitations, and need for accommodations due to both her failure to request an accommodation through the ULM Counseling Center and the nature of her disabilities. Because knowledge of her limitations and need for accommodations is required for both a failure to accommodate claim and a failure to engage in the deliberative process claim, the burden shifts to Molosso to show the existence of a genuine dispute of material fact precluding summary judgment.

Molosso primarily relies on her disclosures of her disabilities to faculty members to attempt to show the existence of a genuine dispute. She directs the Court to her own testimony to support that she disclosed her disabilities to multiple faculty members. See Record Document 72-2 at 7. She further contends ULM's "policy" requires faculty to refer students for an accommodation when a student discloses a disability. See id. at 7, 11, 21. Although Molosso concedes faculty members referred her to the ULM Counseling Center, she maintains these referrals were not effective because she "was never informed that she might qualify for accommodations . . . or that the Counseling Center was the place she needed to go at ULM to get a testing accommodation." Id. at 8-9. She further asserts her need for an accommodation was open, obvious, and apparent such that Defendants had the requisite notice. See id. at 19.

At the outset, the Court finds it important to distinguish Defendants' knowledge of Molosso's disability from Defendant's knowledge of any consequential limitations or need for accommodations. Molosso's testimony regarding her alleged conversations with faculty members about her disabilities establishes a genuine dispute as to whether Defendants knew of her disabilities. See e.g., id. at 20-21. However, that testimony does not automatically trigger Defendants' liability under Section 504. That a defendant must know of the disability, any resulting

13

limitations, *and* need for accommodations to be liable under Section 504 is axiomatic. <u>See</u> <u>Cadena</u>, 946 F.3d at 724.

With these principles in mind, the Court turns to Molosso's arguments that ULM's policy requires faculty to refer students to the ULM Counseling Center when a student discloses a disability. Molosso does not provide the Court with a written version of this purported policy, but she cites to Dr. Bailes's and Dr. Simpson's depositions. <u>See</u> Record Document 72-2 at 7, 11. Although Molosso claims ULM has such a policy, a review of the cited testimony refutes that characterization.

Dr. Bailes is the current Dean of the College of Health Sciences at ULM and previously served as the Director of the Nursing School. <u>See</u> Record Document 50-5 at 1. Dr. Bailes instructed "faculty that if a student requested or was discussing *accommodation*, that they would be directed down to the counseling center." Record Document 72-6 at 3 (emphasis added). Further, while Dr. Simpson testified that faculty members received training on signs to look for to determine if a student needed counseling generally, he said the accommodation process itself was "student-initiated." Record Document 72-7 at 15. A fair interpretation of the cited testimony supports the conclusion that a faculty member would only be obligated to refer a student to the ULM Counseling Center if that student requested or discussed accommodation specifically. Thus, even assuming a violation of a university policy could supplant the essential elements of Section 504, Molosso must still show Defendants knew of her disability and its limitations through either her request for an accommodation or by virtue of her limitations being open and obvious. <u>See</u> <u>Cadena</u>, 946 F.3d at 724.

Molosso's need for accommodation was not open, obvious, and apparent. The "open-and-obvious exception is narrow." <u>Garcia v. City of Lubbock, Texas</u>, No. 21-11134, 2023 WL 4636896,

at *11 (5th Cir. July 20, 2023) (quotation marks omitted). "'[W]hen dealing in the amorphous world of mental disability,' it will often be impossible for [a defendant] to identify [a plaintiff's] specific disabilities, limitations, and possible accommodations." Jin Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio, 633 F. App'x 214, 216 (5th Cir. 2015) (quoting Taylor v. Principal Fin. Grp., Inc., 93 F.3d 155, 165 (5th Cir. 1996)); see also Pena Arita v. Cnty. of Starr, Texas, No. 19-288, 2020 WL 5505929, at *7 (S.D. Tex. Sept. 11, 2020) ("Mental disabilities are ordinarily discreet and rarely open and obvious, so 'a disabled [plaintiff] cannot remain silent and expect [the defendant] to bear the initial burden of identifying the need for, and suggesting, an appropriate accommodation' in most cases.") (quoting Taylor, 93 F.3d 165)). The exception is typically applied to "well-understood and outwardly visible disabilities like, say, blindness, deafness, or being wheelchair-bound." Windham v. Harris County, 875 F.3d 229, 238 (5th Cir. 2017).

In the instant matter, Molosso's disabilities are mental in nature. Molosso contends "[t]hese conditions impacted her ability to complete coursework and perform on exams" and that faculty, such as Ms. Young, observed Molosso "freeze during high stakes testing." Record Document 72-2 at 19-21. She asserts her "known testing challenges gave rise to ULM's duty to engage in the interactive process or at the very least avoid triggering known difficulties." Id. at 22.

The Court does not agree. To find Molosso's need for accommodations was open, obvious, and apparent would require extending what is intended to be a narrow exception. Jin Choi is persuasive. In Jin Choi, the plaintiff argued the limitations arising from attention deficit disorder were open, obvious, and apparent because:

> (1) various faculty members reacted negatively towards him; (2) one faculty member stated that he had a 'mental problem' and had a 'tendency to make things up'; (3) several faculty members observed that he failed to pay attention and seemed in a hurry; and (4) three faculty members asked him if he had a learning disability after he received a failing grade in a third-year course.

Jin Choi, 633 F. App'x at 216. The Fifth Circuit found "nothing in Choi's allegations that would have notified the Dental School of Choi's limitations requiring accommodation." Id.

Like the Jin Choi plaintiff, Molosso attempts to show her disabilities were open, obvious, and apparent by arguing her professors observed her struggle on coursework and during exams. However, just as in Jin Choi, that she may have struggled to pay attention in her class or froze during courses does not make her need for accommodations open, obvious, and apparent. See also Thuy Doan v. Bd. of Supervisors of La. State Univ., No. 17-3471, 2017 WL 3574453, at *4 (E.D. La. Aug. 16, 2017) (finding the plaintiff must have made a "specific request for accommodations because her disability [anxiety, depression, and insomnia] was not open, obvious, or apparent").

Therefore, to establish that Defendants knew of Molosso's need for accommodation, she must show she identified "the resulting limitations . . . and requested an accommodation in direct and specific terms." Smith, 956 F.3d at 317 (citing Windham, 875 F.3d at 237). A plaintiff "need not use a specific phrase to request an accommodation, [but] this does not obviate the need for a[] [plaintiff] to directly make a request for the specific accommodation of a[] [defendant] in the first instance." Bright v. Martin, No. 22-30767, 2023 WL 4044437, at *1 (5th Cir. June 15, 2023) (citing Clark v. Champion Nat'l Sec., Inc., 952 F.3d 570, 587 (5th Cir. 2020)). While a defendant "should do what it can to help when a[] [plaintiff] may need an accommodation but doesn't know how to ask for it[,] . . . a[] [defendant] need not divine the needs of the [plaintiff] absent any affirmative signal from that [plaintiff]." Edwards v. Wal-Mart Stores, Inc., 247 F.3d 241, 2001 WL 43546 at *2 (5th Cir. 2001) (emphasis removed) (internal marks omitted).

Molosso's opposition directs the Court to only one conversation involving accommodations. See Record Document 72-2 at 21. Specifically, Molosso testified that, sometime after she took the second examination in NURS 4066, she informed Ms. Young of her depression

and ADHD, and Ms. Young informed her it was "too late" to get an accommodation. Record Document 72-3 at 8.

In her opposition, Molosso maintains this testimony shows "a material dispute of fact as to whether ULM timely acted on Ms. Molosso's known disability." Record Document 72-2 at 21. The Court does not agree. As Molosso herself notes, she "didn't know" what accommodation she wanted to try to get or that she may qualify for accommodations until Ms. Young discussed accommodations. Record Document 72-3 at 8. Until then, Molosso had not sought testing accommodations, and Defendants cannot be faulted for failing to provide accommodations or enter an interactive process to accommodate Molosso without knowing of her need for accommodations at an earlier point. See Pena Arita, 2020 WL 5505929 at *7. Put differently, any untimeliness related to the referral was based on Molosso's own failure to inform Defendants of her need for an accommodation and did not stem from the actions of any Defendant.

Nor does the Court agree that this conversation with Ms. Young creates liability on the part of the Defendants. The Court finds Pickett v. Texas Tech University Health Sciences Center, 37 F.4th 1013 (5th Cir. 2022), persuasive. In Pickett, the university "processe[d] requests for academic accommodations via its ADA office." Id. at 1020. The plaintiff had previously successfully petitioned for accommodations through that office and received extra time for tests, note-taking assistance, and a quieter testing facility. See id. The plaintiff later presented her "Letter of Accommodation" to a professor and asked to push back the deadlines for an assignment, arguing she needed more time because of her disability. Id. at 1021.

The Fifth Circuit found that the plaintiff's "claims against the [university] . . . fail[ed]" because she "was obligated to present her request for deadline accommodations to the [university]'s ADA office rather than making it verbally to her advisor." Id. at 1032. The university

17

had a "centralized, interactive process for requesting accommodations." Id. at 1033. Therefore, the plaintiff did not state a claim for failure to accommodate against the named defendants because she had "not ensure[d], in 'direct and specific terms,' that her limited ability to meet deadlines was 'known by the covered entity.'" Id. (quoting Smith, 956 F.3d at 317).

Molosso has not shown how her verbal request to Ms. Young is sufficient to charge the named Defendants with knowledge of her limitations and need for accommodations. Just like in Pickett, Defendants here centralize their accommodation requests through the ULM Counseling Center. That entity, not individual professors, is responsible for determining who qualifies for accommodations. Here, like the plaintiff in Pickett, Molosso did not make her request through that centralized entity and instead made a request to her instructor. "As a result, the institution cannot reasonably be charged with knowledge of [her] disability and its consequential limitations."[7] Salamah v. UT Sw. Med. Ctr., No. 24-0477, 2025 WL 1211124, *10 (N.D. Tex. Apr. 25, 2025) (emphasis removed). Further, unlike in Salamah, Molosso has not set forth any facts suggesting that the Defendants, despite her failure to use that interactive process, nevertheless knew of her limitations and need for accommodation such that they can be reasonably charged with that knowledge.

The Court acknowledges that the Pickett plaintiff, unlike Molosso, knew that accommodation requests were centralized through a specific entity. However, for the following

---

[7] The Court notes Pickett may be construed as being limited solely to whether the university itself, as a named defendant, was liable if the plaintiff did not use the centralized process. To the extent the holding may be construed as such, the Court still finds Pickett instructive. As in Pickett, Molosso likewise still fails to show how the Board, Dr. Arant, and Dr. Simpson, i.e., the relevant entities, knew of her limitations and need for accommodation when she made that request through a different entity, i.e., Ms. Young.

reasons, the Court does not find that distinction strong enough to stray from the principles enumerated in Pickett.

First, Molosso attributes her own failure to make an accommodation request through the ULM Counseling Center to Defendants' failure to tell her the ULM Counseling Center was responsible for handling accommodation requests. See Record Documents 72-2 at 7 and 72-4 at 2. However, Molosso cites no caselaw to support that a professor or administrator must individually explain the accommodations process when a student discloses a *disability*, especially where, as is the case here, that information is widely available and the student's limitations and need for an accommodation are not open, obvious, and apparent.

Indeed, Fifth Circuit precedent suggests the opposite. The Fifth Circuit has held that in the employment context Section 504 "does not require an employer to assume that an employee with a disability suffers from a limitation. In fact, better public policy dictates the opposite presumption: that disabled employees are not limited in their abilities to adequately perform their jobs." Taylor, 93 F.3d at 164. The Court finds that the same principles hold true in the educational context. Professors should not presume that a student with a disability needs accommodation because of that disability. Therefore, any obligation on the part of an individual professor to explain the accommodation process would only be triggered once a student discloses their limitations and need for an accommodation. As this Court has explained, Molosso did not discuss the possibility of accommodations until shortly before the final examination, at which point she was informed of the process for obtaining said accommodations. See Record Document 72-4 at 3. Absent any earlier "affirmative signal" from Molosso, Defendants did not need to "divine the need[]" of an accommodation and personally explain that process to her. Edwards, 2001 WL 43546, at *2; Pena Arita, 2020 WL 5505929 at *7.

Second, even assuming Molosso understood the ULM Counseling Center to be a mental health resource, Molosso's own testimony demonstrates that at least one professor referred her to the counseling center to help her manage her disabilities in an academic setting. For example, after Molosso failed her first exam in NURS 4067, she met with Ms. Wiggins for a test review, and they discussed her disabilities:

> Q.    When you were discussing your disabilities . . . Is that when [Ms. Wiggins] discussed or recommended going to the counseling center?
>
> A.    Yes, ma'am. During the test one, that's when she referred me to the counseling center, however, it was to talk to the counselors about my testing anxiety and my ADHD and trying to get a plan to study. And I just -- like I told in previous, I told her that I already had a counselor and that we were going and I was seeing him regularly, and I was, and I still am to review over testing strategies.

Record Document 72-3 at 7. Further, she concedes that her learning contract recommended she seek counseling at the ULM Counseling Center as a condition of her readmission. See Record Document 72-2 at 21.

Throughout her opposition, Molosso repeatedly claims these referrals were ineffective because she did not know the ULM Counseling Center handled accommodation requests. However, these referrals were made in the context of academic discussions, and the ULM Counseling Center was presented to her, on at least one occasion, as a resource "to talk to the counselors about [her] testing anxiety and [her] ADHD and trying to get a plan to study." Record Document 72-3 at 7. The professors did not make formal referrals for accommodations, but the professors certainly did not ignore Molosso as she claims in her opposition. See Record Document 72-2 at 22. Instead, professors referred her to the ULM Counseling Center, if not for formal accommodations, to at least help her create a "plan" to succeed academically. And, despite these multiple referrals, Molosso did not avail herself of the opportunity to use that resource.

Finally, Molosso's reliance on <u>Rogers v. Western University of Health Sciences</u>, 787 F. App'x 932 (9th Cir. Oct. 3, 2019), to create a genuine dispute of material fact is misplaced. Molosso cites this case for the proposition that "informal disclosures – especially when made in the context of ongoing academic discussions – trigger the institution's duty to respond." Record Document 72-2 at 20. Notwithstanding the fact that <u>Rogers</u>, an unpublished Ninth Circuit case, is not binding precedent, <u>Rogers</u> is not analogous. In <u>Rogers</u>, the plaintiff previously requested an accommodation in the form of a schedule change, which the university granted. <u>See Rogers</u>, 787 F. App'x at 934. The plaintiff subsequently renewed her request for a schedule change through the associate dean. <u>See id.</u> The associate dean responded by saying they could meet to discuss that accommodation, and he continued to talk with the plaintiff about the requested schedule change. <u>See id.</u> at 934-35. The Ninth Circuit concluded summary judgment was inappropriate as to this claim because "a reasonable factfinder could conclude from [the dean's] numerous emails to [the plaintiff] on the subject that he held himself out as an appropriate person to handle the request." <u>Id.</u> at 935.

Here, as discussed extensively *supra*, Molosso did not make any request for an accommodation until her conversation with Ms. Young. At that point, Ms. Young informed her that it was too late in the semester.[8] Unlike the <u>Rogers</u> plaintiff, Ms. Young did not engage in multiple conversations with Molosso regarding her need for accommodation and then fail to provide said accommodation. Further, Ms. Young "told [Molosso] how to get a testing accommodation"

---

[8] In her opposition, Molosso states "Ms. Young actually deterred [Molosso] from going to the university's designated office for disability assessment." Record Document 72-2 at 22. However, "[s]tatements by counsel in briefs are not evidence." <u>Skyline Corp. v. N.L.R.B.</u>, 613 F.2d 1328, 1337 (5th Cir. 1980). Not only has Molosso failed to proffer evidence suggesting Ms. Young's statement was factually incorrect, but Molosso has also failed to proffer any evidence suggesting she was deterred. Neither her deposition nor her declaration state Ms. Young deterred her from going to the ULM Counseling Center.

through the ULM Counseling Center. Record Document 72-4 at 3. This shows Ms. Young, unlike the dean in Rogers, told Molosso which entity was responsible for handling accommodation requests. Neither Molosso's deposition nor her declaration suggests she believed Ms. Young was the "appropriate person to handle [her] request." Rogers, 787 F. App'x at 935.

Ultimately, while there are distinctions between this case and Pickett, the Court finds Pickett instructive. Because Molosso made her accommodations request through Ms. Young, it did not put Defendants on notice because the relevant entity did not know of Molosso's limitations and need for an accommodation. She has thus failed to show the existence of a genuine dispute regarding Defendants' lack of knowledge, which is an essential element of a failure to accommodate claim and failure to engage in a deliberative process claim under Section 504. See Smith, 956 F.3d at 317. As such, Defendants are entitled to summary judgment on these claims.[9]

## IV.    Unopposed Summary Judgment Claims.

Molosso did not file an opposition to Defendants' motion for summary judgment on her Title VI, Section 504 disparate treatment, Section 1983, Louisiana Constitution, intentional infliction of emotional distress, violation of ULM's policy, and bad faith breach of contract claims. See Record Document 72 at 2. Therefore, the competent summary judgment evidence presented by Defendants in support of dismissing these claims is considered undisputed. See Jegart, 384 F. App'x at 400. The Court begins with whether Defendants have shown a lack of genuine dispute as

---

[9] Defendants separately move to dismiss Molosso's failure to accommodate claim premised on the HESI review questions and third HESI examination. See Record Document 50-3 at 11-13. The Court does not know if Molosso intended these to be discrete failure to accommodate claims, and she does not address any accommodations related to either the review questions or the HESI examination in her opposition. See Record Document 72. Nevertheless, to the extent that these are separate claims, the Court finds Defendants entitled to summary judgment for the same reasons stated *supra*.

to these claims sufficient to shift the burden with Molosso. The Court will conclude this section with an explanation of whether summary judgment is or is not warranted as to these claims.

First, Defendants seeks dismissal of Molosso's Title VI claim. <u>See</u> Record Document 50-3 at 6-8. Molosso's Title VI claim is premised on her allegation that Defendants treated her differently from similarly situated comparators because "two African American female students . . . were able to remain in the program after having 4-5 strikes . . . without having their appeals heard or being required to sit out a semester." Record Document 1 at 10-11. An essential element of the prima facie case for a Title VI claim is that a defendant treated a plaintiff "differently from similarly situated students who were not members of h[er] protected class." <u>Wells v. E. Baton Rouge Sch. Sys.</u>, No. 23-595, 2024 WL 4143581, *5 (M.D. La. Aug. 8, 2024). Defendants proffer Dr. Bailes's affidavit. <u>See</u> Record Document 50-5. Dr. Bailes attests that the two African-American students were dismissed from the Nursing School after their "third non-progressive semester[,]" "[b]oth students appealed for readmission" and were readmitted, and "[b]oth students were required to execute Learning Contracts as a condition of readmission." <u>Id.</u> at 2. These undisputed facts demonstrate the lack of evidence supporting that Defendants treated Molosso differently than similarly situated non-white students.

Second, Defendants seek dismissal of Molosso's disparate treatment claims premised on (1) the third "HESI"[10] examination, (2) post-grade adjustments, and (3) Appeal II. <u>See</u> Record Document 50-3 at 11-18. To be entitled to relief under Section 504, Molosso must show she was "excluded from participation in, or . . . denied benefits of, services, programs, or activities . . . , or is otherwise being discriminated against . . . and . . . that such exclusion, denial of benefits, or

---

[10] Students in the fifth level must pass an examination offered through Health Education Systems, Inc., which is commonly referred to as the "HESI" examination. <u>See</u> Record Document 72-2 at 10.

discrimination is by reason of h[er] disability." Paley, 81 F.4th at 449. Defendants generally argue "[t]here is . . . no evidence that Molosso was treated any differently due to her claimed disability." Record Document 50-3 at 2.

As to the HESI examination, Defendants do not dispute Ms. Young, the NURS 4066 professor, interrupted Molosso during the third HESI examination to encourage her testing pace. See id. at 11. Nevertheless, Defendants provide evidence that Molosso passed the HESI examination on her fourth attempt and further note the lack of evidence suggesting any interruption was based on Molosso's disability. See id. at 11-12 and 50-4 at 29. Therefore, Defendants seek dismissal because Molosso cannot show "she was excluded from taking the HESI exam or that the 'interruptions' were solely based upon her disabilities." Record Document 50-3 at 12.

As to Molosso's post-grade adjustments disparate treatment claim, Defendants submit the affidavits of Ms. Young and Ms. Wiggins in support of dismissal. See Record Documents 50-6 and 50-7. Both Ms. Young and Ms. Wiggins attest that "[i]f more than 50% of the overall class answered the question incorrectly, the question is reviewed to determine if it should be adjusted." Id. Those questions "are reviewed blindly, meaning instructors do not know which students answered the question correctly." Id. Ms. Wiggins and Ms. Young further attest Molosso received adjusted points on all three exams. See id. Therefore, Defendants seek dismissal because she "received the benefit" of the post-grade point adjustments. Record Document 50-3 at 14-15.

Finally, as to Molosso's Appeal II disparate treatment claim, Defendants point to the undisputed fact that Molosso's appeal was heard and considered. See Record Document 72-1 at ¶ 10-11. Defendants then address Molosso's argument that it was discriminatory to count her failures of NURS 4000 and NURS 4001 during the fall of 2020 as a "strike." Record Document 50-3 at 16. Defendants point to Molosso's own testimony conceding that, even if those failures were not

24

counted, she still would have been dismissed because she failed NURS 4066 and NURS 4067. See Record Document 50-4 at 13. Defendants further point to the lack of evidence suggesting it was discriminatory for the appeal committees to focus on ULM's policy. See Record Document 50-3 at 17. Therefore, Defendants conclude dismissal is warranted because "[t]here is no evidence she was excluded from the benefit of an appeal for readmission, no evidence she was excluded from an appeal by reason of her disabilities, nor is there any evidence the appeal process itself was not properly conducted."[11] Id. at 17-18.

The facts set forth for each of the Section 504 disparate treatment claims demonstrate a lack of evidence to support that either Molosso was denied or excluded a benefit or otherwise discriminated against or that the adverse action was because of her disability. These facts thus demonstrate a lack of evidence for one or both of these essential elements of a Section 504 claim. See Paley, 81 F.4th at 449.

Third, Defendants seek dismissal of Molosso's Section 1983 claims premised on violations of Title VI and Section 504. See Record Document 50-3 at 18. An essential element of a Section 1983 claim is an underlying violation of the Constitution or federal law. See D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist., 629 F.3d 450, 456 (5th Cir. 2010). Defendants seek dismissal because "there is a complete lack of evidence that Molosso's constitutional rights were violated under Title VI or [Section] 504." Record Document 50-3 at 18. As set forth herein, the Court

---

[11] Molosso does not formally oppose Defendants' motion for summary judgment on this claim, but she briefly argues Defendants "offer absolutely no evidence to support" that Molosso's appeal "was handled per policy." Record Document 72-2 at 24. Even if the Court considers this an opposition, Defendants are still entitled to summary judgment. Defendants have pointed to a lack of evidence as to this essential element, yet Molosso offers no evidence suggesting a genuine dispute as to whether the denial was discriminatory or that she was excluded from the appeal.

ultimately agrees Molosso's Section 504 and Title VI claims should be dismissed. Thus, Defendants have shown a lack of evidence as to this essential element of a Section 1983 claim.

Fourth, Defendants seek dismissal of Molosso's Louisiana Constitution Article 1, section 2 claim predicated on her allegation that Defendants dismissed her from the Nursing School without procedural due process. See id. at 19-21. Article 1, section 2 provides, "[n]o person shall be deprived of life, liberty, or property, except by due process of law." La. Const. art. I, § 2. The Louisiana Constitution's "guarantee of due process does not vary semantically from the Due Process Clause of the Fourteenth Amendment," so "federal jurisprudence is relevant in determining the nature and extent of [Louisiana] Const[itution] Art[icle] 1, [section] 2's due process protection." Fields v. State, 714 So. 2d 1244, 1250 (La. 7/8/98).

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976) (internal quotation marks omitted). For academic dismissals, a university satisfies its due process requirements where it "fully inform[s] [the student] of the faculty's dissatisfaction with her clinical progress and the danger that this pose[s] to timely graduation and continued enrollment" and the university's "decision to dismiss [the student] was careful and deliberate." Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 85, 98 S. Ct. 948, 952 (1978). The Fifth Circuit has interpreted Horowitz to require schools to "afford the student 'meaningful notice and an opportunity to respond.'" Doe v. Univ. of N. Tex. Health Sci. Ctr., No. 23-10764, 2024 WL 3427049, at *5 (5th Cir. July 16, 2024) (quoting Davis v. Mann, 882 F.2d 967, 975 (5th Cir. 1989)).

Defendants assert Molosso cannot show she did not receive notice and an opportunity to be heard. See Record Document 50-3 at 20-21. Neither party disputes that students are dismissed from the Nursing School if they fail three semesters or fail a class they had to repeat. See Record

26

Document 72-1 at ¶ 3. Defendants proffer evidence that Molosso failed the first two examinations in NURS 4066 and NURS 4067. See Record Documents 50-6 and 50-7. Neither party disputes that Molosso, having failed a repeated course in the past, successfully navigated the appeal process. See Record Document 72-1 at ¶ 7. Neither party disputes that Molosso filed a grade appeal for her failures of NURS 4066 and NURS 4067 and filed Appeal II, all of which were heard and considered. See id. at ¶ 9-11. Defendants further assert that, in dismissing Molosso, they used a careful and deliberative process and that there is no evidence that Molosso was "treated differently or that the syllabus was not followed." Record Documents 50-3 at 20 and 75 at 7-8. Thus, Defendants assert Molosso knew of her precarious academic position and had a meaningful opportunity to be heard.[12] See Record Document 50-3 at 20-21.

Fifth, Defendants seek dismissal of Molosso's Louisiana Constitution Article 1, section 3 equal protection claim predicated on alleged discrimination. See Record Document 50-3 at 18-19. "The constitutional right of equal protection of the laws means that every one is entitled to stand before the law on equal terms with, to enjoy the same rights as belong to, and to bear the same burdens as are imposed upon, others in a like situation." State v. Guirlando, 152 La. 570, 586

---

[12] The Fifth Circuit has upheld the constitutionality of similar appellate processes. See Doe, 2024 WL 3427049 at *5 (no due process violation where plaintiff received notices of academic dismissal and was given an opportunity to appeal); Perez v. Texas A & M Univ. at Corpus Christi, 589 F. App'x 244, 250 (5th Cir. 2014) (no procedural due process violation where plaintiff knew what would cause her to fail the course, she received warnings for her failure to comply with course requirements, and was given the opportunity to "apply for reinstatement and to file an appeal" during which she "provided written and in-person testimony in support"); Chan v. Bd. of Regents of Tex. S. Univ., No. 12-0325, 2012 WL 5832494, at *4 (S.D. Tex. Nov. 16, 2012) ( no due process violation because "[n]either [plaintiff] argue[d] that they lacked notice of the school's policy to dismiss students who fail to maintain a 2.0 cumulative GPA . . . [and] TSU gave the plaintiffs an oral hearing on their petitions"); Gilani v. Univ. of Tex. Sw. Med. Ctr., No. 21-1461, 2023 WL 2518811, at *6 (N.D. Tex. Mar. 13, 2023) (no due process violation where plaintiff "received notice and an opportunity to respond to each of UT Southwestern's decisions [and] . . . had an opportunity to appeal the issuance of an academic warning, his dismissal after failing the GI Course, and his dismissal after failing the remedial GI Course").

(1922). This constitutional provision "prohibits discrimination by laws." Baynard v. Guardian Life Ins. Co. of Am., 399 So. 2d 1200, 1202 (La. Ct. App. 1981); see also Smolensky v. Gen. Elec. Co., No. 99-1849, 2000 WL 341031, at *9 (E.D. La. Mar. 30, 2000) ("This Article on its face only deals with *laws* that discriminate against an individual. It does not create a cause of action against a private individual or a company.") (emphasis original). As such, an essential element of this claim is that a plaintiff is challenging a law. Defendants seek dismissal because Molosso has not challenged a state law and thus cannot "meet her evidentiary burden in this regard." Record Document 50-3 at 19. Therefore, Defendants have pointed to a lack of evidence as to this essential element.

Sixth, Defendants seek dismissal of Molosso's intentional infliction of emotional distress claim. See Record Document 50-3 at 21-22. In order to establish a claim for intentional infliction of emotional distress under Louisiana law, a plaintiff must show: the conduct was "extreme and outrageous;" the emotional distress suffered was severe; and the defendant "desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto, 585 So.2d 1205, 1209 (La.1991). Defendants argue "[t]here is no evidence of extreme and outrageous conduct on the part of ULM." Record Document 50-3 at 22. In so arguing, Defendants again argue Molosso knew of her examination scores and thus knew she may not graduate. See id. Defendants additionally point to the lack of evidence that Molosso's appeal was extreme and outrageous, noting that her dismissal was based on her failure to pass her fifth level courses. See id.; see also Barrino v. E. Baton Rouge Par. Sch. Bd., 697 So.2d 27, 33 (La. App. 1 Cir. 6/20/97) ("[N]othing contradicted [the teachers'] respective statements that they treated Barrino the same as other students in their classes regarding the course requirements and grading scale. Barrino's conclusory allegation that defendants knew

she would suffer emotional distress by these actions is not sufficient to defeat summary judgment . . . .”). As such, Defendants have pointed to a lack of evidence showing its conduct was extreme and outrageous, which is an essential element of this claim.

Finally, Defendants move for summary judgment on Molosso's claims predicated on violations of ULM's policy and rights due to its students and bad faith breach of contract. See Record Document 50-3 at 22-25. Molosso's violation of policy and rights claim is brought under Civil Code article 2315, which requires a plaintiff to affirmatively establish the following: “(1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff . . . ? (2) Did the defendant(s) owe a duty to the plaintiff? (3) Was the duty breached? (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?” Davis v. Witt, 851 So. 2d 1119, 1127 (La. 7/2/03).

Molosso's bad faith breach of contract claim requires she prove: “(1) defendants owed [plaintiff] an obligation; (2) defendants failed to perform that obligation; and (3) defendants' failure resulted in damages to the plaintiff[].” Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 193 So. 3d 1110, 1115 (La. 12/8/15). “An obligor is in bad faith if he intentionally and maliciously fails to perform his obligation. . . . The term bad faith means more than mere bad judgment or negligence; it implies the conscious doing of a wrong for dishonest or morally questionable motives.” Aymond v. Citizens Progressive Bank, 277 So. 3d 477, 497 (La. App. 2 Cir. 6/26/19). Thus, both bad faith breach of contract and a cause of action under Civil Code article 2315 require, as an essential element, proof of a breach of either a duty or contractual obligation.

Defendants seek dismissal of the negligence and bad faith breach of contract claims premised on Molosso's allegation that “her NURS 4066 and NURS 4067 grades were improperly

calculated and that her appeals . . . were improperly adjudicated." Record Document 50-3 at 24. Both claims appear to be based on the student handbook and the alleged violation of same. See id. and 50-8. Defendants point to the lack of evidence that their decisions were arbitrary and capricious. See Record Document 50-3 at 24. Defendants further proffer evidence that Molosso received the benefit of post-grade adjustments on each of her examinations. See Record Documents 50-6 and 50-7. Finally, Defendants assert "that it was Molosso's own academic failures which led to her dismissal from the Nursing School." Record Document 50-3 at 23. As such, Defendants conclude Molosso cannot show they breached a duty owed to her, either negligently or contractually, because there is no evidence that they violated the duties enumerated in the handbook.

As set forth *supra*, Defendants have met their initial summary judgment burden for dismissal of Molosso's Title VI, Section 504 disparate treatment, Section 1983, Louisiana Constitution, intentional infliction of emotional distress, violation of ULM's policy, and bad faith breach of contract claims by pointing to Molosso's inability to establish an essential element based on the current undisputed facts. The burden thus shifts to Molosso to demonstrate the existence of a genuine dispute as to those elements. See Distribuidora Mari Jose, S.A., 738 F.3d at 706; Austin, 864 F.3d at 335. This she has not done. As such, Defendants are entitled to summary judgment on these claims.

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Defendants' motion for summary judgment (Record Document 50) is **GRANTED**. All of Molosso's claims filed against Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Molosso's renewed Rule 56(d) or motion for reconsideration (Record Document 72) is **DENIED**.

**IT IS FURTHER ORDERED** that Molosso's motion to strike (Record Document 76) is **GRANTED**.

A judgment consistent with the instant Memorandum Ruling shall be issued herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 11th day of June, 2025.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE